JAMES C. CONVERSE, ADMINISTRATOR OF PHILIP GREELY, DE-CEASED, PLAINTIFF IN ERROR, v. BENJAMIN BURGESS, NATHAN B. GIBBS, AND BENJAMIN T. BURGESS, COPARTNERS, UNDER THE FIRM OF BENJAMIM BURGESS AND SON.

<div style="float:right">

| | |
|---|---|
| 18h | 413 |
| L-ed | 455 |
| 24h | 525 |
| 2b | 480 |
| 112 | 501 |
| 123 | 365 |
| 18f | 586 |
| 18f | 892 |
| 23f | 651 |
| 137 | 328 |
| 138 | 567 |
| 144 | 34 |

</div>

Where merchant appraisers were appointed, under the tariff acts of 1842 and 1846, to review the decision of the public appraisers, it was a question of fact for the jury to decide, whether the examination of samples drawn, some weeks before their appraisement, was a substantial compliance with the law which required them to examine one package, at least of every ten packages of goods, wares, and merchandise.

Being a question of fact for the jury, evidence was admissible tending to show that they had not complied with the law.

The protest being "that the goods were not fairly and faithfully examined by the appraisers" was a sufficient notice of the grounds upon which the importers contended that the appraisement was unlawful. It was not necessary to set forth, specifically, the reasons upon which the charge was founded.

THIS case was brought up, by writ of error, from the circuit court of the United States for the district of Massachusetts.

The facts of the case are stated in the opinion of the court. It is only necessary to add the protest and evidence offered as they were stated in the bill of exceptions, namely:—

"I this day pay to Philip Greely, jr., collector of this port, on behalf of Messrs. B. Burgess and Sons, the sum of sixteen hundred forty-three dollars and $\frac{48}{100}$, more or less, claimed by him as due to the United States from them, on merchandise imported by them in the brig Eliza Burgess, under protest, with the intention of reclaiming the same or any part thereof, as may be found to have been illegally paid by them. Said sum is claimed by advance of value on the merchandise by the appraisers, thereby increasing the duties and assessing a penalty—all of which we protest against on the ground of fair valuation in the invoice, and that the goods were not fairly and faithfully examined by the appraisers.    N. B. GIBBS."

The plaintiffs further offered to prove, under said protest, that the merchant appraisers did not examine or see any of the original packages of the merchandise in question, and only saw samples which had been taken on the 26th of April, 1850, from one in ten of the packages described in the invoice, and that

35 *

'such samples, so drawn and exposed to the air, would not afford a fair criterion by which to judge of the importation, and claimed the right to go behind the return of the said merchant appraisers, on the ground that they had not examined the sugars, as required by law, and to put it as a question of fact to the jury without alleging fraud.

The defendant objected to the admission of such evidence to go to the jury in the absence of fraud on the part of the appraisers, and claimed that their decision was in the nature of an award, and final under the statute, and not open under this protest. But this court ruled that the evidence was admissible; and that the plaintiffs might go to the jury on the facts, whether the examination made by the merchant appraisers was, in substance and effect, equivalent to an examination of one package in ten of the importation, and if it was not, that the appraisement was void. Whereupon the counsel for the defendant did then and there except to the said rulings of the court, and thereupon the jury returned a verdict for the plaintiffs, for $2,127.68.

The case was submitted, on printed arguments, by *Mr. Cushing,* (attorney-general,) for the plaintiff in error, and *Mr. Andros,* for the defendants.

Mr. Justice CAMPBELL delivered the opinion of the court.

The intestate of the plaintiff is charged in this judgment for an excess of duties collected by him in his capacity of collector of customs at the port of Boston, under color of a law of the United States.

The defendants in April, 1850, imported into Boston an invoice of sugars from the Island of Cuba, and made entry as in case of goods purchased, by the production of the invoice and an oath that it exhibited a just and faithful account of the actual cost and all charges thereon, &c. The public appraisers advanced the valuation of the merchandise contained in the invoice ten per cent. above the invoice price, and made their return to the collector accordingly, the 14th May, 1850. From this valuation the defendants appealed, and merchant appraisers were appointed to make a new appraisement. These returned their report the 4th June, to the effect that the sugars could not have been purchased at the time of exportation for less than the sum assessed by the appraisers, at the principal markets of Cuba.

Duties were levied according to this appraisement, and also an additional duty of 20 per cent. under the 8th section of the act of 30th July, 1846. These duties were paid 4th June, 1850, under a protest, by the defendants, with the declared " intention

of reclaiming the same or any part thereof as may be found to have been illegally paid by them;" and affirm as the ground of their protest the "fair valuation in the invoice, and that the goods were not fairly and faithfully examined by the appraisers."

Upon the trial of the cause the importers (defendants) offered to prove that the merchant appraisers did not examine nor see any of the original packages of the merchandise in question, but only saw samples which had been taken on the 26th April, 1850, from one in ten of the packages described in the invoice; and that such samples so drawn and exposed to the air would not afford a true criterion by which to judge of the importation; and claimed the right to go behind the return of the said merchant appraisers, on the ground that they had not examined the sugars as required by law, and to put that as a question of fact to the jury, without alleging fraud.

The collector (plaintiff's intestate) objected to this evidence, and claimed that the decision of the appraisers was in the nature of an award and final under the statute, and not open under this protest, in the absence of fraud, to review.

The circuit court admitted this evidence, and decided that the importers (defendants) might go to the jury on the facts, whether the examination made by the merchant appraisers was in substance and effect equivalent to an examination of one package in ten of the importation, and if it was not, that the appraisement was void.

A verdict and judgment were rendered in favor of the importers, and these decisions of the circuit court have been assigned for error in this court.

The right of an importer, who has paid money, under a valid protest, to a collector of the customs, for duties illegally assessed, to maintain an action for its return has been acknowledged by congress and in this court. 5 Stats. at Large, 727, c. 22; Greely v. Thompson, 10 How. 225. The only inquiries in such an action are, whether the duties have been legally charged, and does the protest conform to the act of congress above cited? The ascertainment of the value of imports, upon which the assessment of duties is made, is confided in the first instance to officers of the government, and, in the case of dissatisfaction of the importer with their assessment, to discreet and experienced merchants familiar with the character and value of the goods in question, whose decision is final, provided it is made in pursuance of law.

They are required by all reasonable ways or means in their power to ascertain, estimate, and appraise "the true and actual market value and wholesale price of the import," at the time and place or places specified in the statutes, "any invoice or

affidavit thereto to the contrary notwithstanding;" they are authorized "to call before them and examine upon oath or affirmation any owner, importer, consignee, or other person, touching any matter or thing they may deem material in ascertaining the true market value or wholesale price of any merchandise imported, and to require the production, on oath or affirmation, of any letters, accounts, or invoices in his possession relating to the same." It is the duty of the collector to designate on the invoice at least one package of every invoice, and one package at least of every ten packages of goods, wares, and merchandise, and a greater number, should he, or either of the appraisers, deem it necessary, to be opened, examined, and appraised, and shall order the package or packages so designated to the public stores for examination. 5 Stats. at Large, 563–565, §§ 16, 17, 21. The appraisers take an oath diligently and faithfully to examine and inspect such goods, wares, and merchandise as the collector may direct, and truly to report, to the best of their knowledge and belief, the true value thereof. 3 Stats. at Large, 735, § 16.

These acts of congress provide for the appointment, regulate the duties, and impose the limitations on the authority of the appraisers, and determine the conditions on which the validity of their assessment depends. All their powers are derived from these acts, and it is their duty to observe the restrictions, and to obey the directions they contain. In the present instance, there was a neglect of the positive mandate "to open, examine, and appraise one package of every invoice, and one package, at least, of every ten packages of goods, wares, and merchandise;" and the jury have found, that the inquiry they made was not, in substance nor in effect, an equivalent for such an examination.

We are, therefore, of the opinion that the importer was not precluded by their return from disputing the sufficiency or accuracy of their assessment. But to enable the importer to do this, he must, before making payment of the duties, enter "a protest," in writing, signed by him, setting forth, "distinctly and specifically, the grounds of objection" to the payment of the duties. In the present instance there was a protest, to which there is no objection, except that its statement was not sufficiently distinct and specific. The ground of objection stated in the protest is, "that the goods were not fairly and faithfully examined by the appraisers."

And the proof offered was, that the appraisers did not examine nor see any of the original packages of the merchandise, and only saw samples which had been taken several weeks before, and which would not afford a true criterion by which to judge of the importation.

This statute was designed for practical use by men engaged

in active commercial pursuits, and was intended to superinduce a prompt and amicable settlement of differences between the government and the importer. The officers of the government on the one part, and the importer or his agent on the other, are brought into communication and intercourse by the act of entry of the import, and opportunities for explanation easily occur for every difference that may arise. We are not, therefore, disposed to exact any nice precision, nor to apply any strict rule of construction upon the notices required under this statute. It is sufficient if the importer indicates distinctly and definitely the source of his complaint, and his design to make it the foundation for a claim against the government.

In the present instance, he asserts that the goods were not fairly and faithfully examined by the appraisers. This, we think, was sufficient, without disclosing the grounds upon which he contended that the appraisement was unfair or unfaithful.

In Jones *v.* Bird, 5 B. & A. 837, which arose under a local act of parliament relating to the commissioners of sewers for Westminster, which provides that no plaintiff should recover in any action for any thing done under certain acts of parliament, unless notice was given to the defendants, specifying the cause of action, Chief Justice Abbott said: " I think the notice sufficient, and that it ought not to be construed with great strictness, its object being merely to inform the defendant substantially of the ground of the complaint, but not of the mode or manner in which the injury has been sustained." And Justice Bayley said: " A notice of this sort does not require the same precision as a declaration. It is quite sufficient if it calls the attention of the defendants to the general nature of the injury, so that they may go to the premises and see what the ground of complaint is."

Under the act of 24 George II. c. 44, which required a notice to justices of the peace which should contain, " clearly and explicitly, the course of action which the party hath, or claimeth to have," the court of exchequer held a notice sufficient, although it was in the form of a declaration, and comprised not only the specific complaint, but all the redundancy and general averments which the experience of pleaders has led them to introduce into that description of pleadings, " for it could not have misled nor imposed any difficulty on the defendants, as to the tender of the amends they might have thought fit to make, and is, therefore, sufficient." Gimbert *v.* Coyney, McClelland & Y. 469.

These authorities disclose a sound principle of interpretation in regard to such notices, and support the principle we have announced in respect to that under consideration.

Upon the whole case, we think there is no error in the record, and judgment is affirmed.

Mr. Chief Justice TANEY, Mr. Justice DANIEL, and Mr. Justice NELSON dissented.

Mr. Chief Justice TANEY. I dissent from the opinion of the court, being of opinion that the grounds of objection are not "distinctly and specifically" set forth in the protest, within the meaning of the act of congress, and that the protest did not apprise the collector of the particular objection taken at the trial, and which could easily have been removed by another appraisement if it had been brought to the notice of the collector in the protest.

Mr. Justice DANIEL and Mr. Justice NELSON concurred with the Chief Justice.