(C.R.D. 79–17)

BENITO FERNANDEZ PANTOJA, AS FORMER DIRECTOR AND PRESIDENT OF MONTEZUMA OF FLORIDA, INC., A DISSOLVED FLORIDA CORPORATION, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 79–5–00747

(Dated December 11, 1979)

*Morales, Rudolph & Hevia (Jorge Hevia, Jr.* on the brief) for the plaintiff.
*Alice Daniel,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Jerry P. Wiskin* on the brief), for the defendant.

## Opinion and Order

FORD, Judge: Defendant, pursuant to rules 4.7 and 4.12 of the rules of this court has filed a motion to dismiss the above-entitled action on the ground that the court lacks jurisdiction.

Plaintiff opposes defendant's motion on the ground that it filed a protest on February 8, 1977. The alleged protest filed on said date is a "Discrepancy Report and Declaration" required by 19 CFR 18.6(c). Defendant denies the discrepancy report and declaration constitutes a protest within the meaning of section 514 of the Tariff Act of 1930 and Customs Regulations, 19 CFR 174.13. In any event, defendant brought to the attention of the court that the entry was liquidated on November 11, 1977, and consequently the alleged protest filed on February 8, 1977, is premature.

The court in reviewing the papers in this matter observed a photocopy of a letter dated October 30, 1978, from the district director of Customs at Miami, Fla., to counsel for plaintiff which reads as follows:

DEPARTMENT OF THE TREASURY,
U.S. CUSTOMS SERVICE,
*Miami, Fla., October 30, 1978.*

JORGE HEVIA, Jr., Attorney,
Miami, Fla.

DEAR MR. Hevia: Reference is made to your letter of January 20, 1978, requesting a refund of duties and internal revenue tax for 673 cartons of sparkling wine, that were found to be short in container No. 399368.

This office has reviewed the file of this importation and the circumstances revolving around the shortage of the wine. The ocean bill of lading indicates that there were 1,100 cartons in the container with corresponding weights. The container was delivered to Moctezuma of Florida, Inc., on January 21, 1977. On January 24, 1977, the seal was broken by Customs and at that time the shortage was discovered.

In the absence of evidence that the merchandise was not shipped by the shipper or not landed, Customs must assume that the total amount of 1,100 cartons were landed in the United States. In accordance with section 141.1 of 19 CFR, chapter 1, the importer of record is liable for all duty and taxes of imported merchandise. An allowance for deficiencies in contents of packages may be allowed under section 158.5 of 19 CFR, chapter 1, if the district director is satisfied of the validity of the importers claim of shortage. In the instant case, no proof has been submitted that 673 cartons of sparkling wine were not shipped or landed in the United States, and as stated previously, section 141.1 of 19 CFR, chapter 1, would apply.

In view of the above, this office has no alternative but to deny your claim for refund of duties.

Sincerely yours,

DOUGLAS D. ANGLE,
*District Director.*

The reference to letter of counsel for plaintiff of January 20, 1978, prompted the court on November 8, 1979, to order the district director to forward to the court the letter or a photocopy of the letter of January 20, 1978, showing date of receipt. On December 2, 1979, a copy of a copy of the letter was received together with a letter of transmittal indicating the original letter could not be located and that the records of the district director do not indicate date of receipt. A copy of the letter received reads as follows:

A. KOSS, ATTORNEY AT LAW, P.A.,
*Coral Gables, Fla., January 20, 1978.*

Re CE726026 dated January 14, 1977, imported by Moctezuma of Florida, Inc.

RICHARD T. MESSICK,
*Senior Import Specialist, Department of the Treasury, U.S. Customs Service, Miami, Fla.*

DEAR MR. MESSICK: As you might be aware, this office represents Benito Fernandez Pantoja and his firm, Moctezuma de Florida, Inc.

We are somewhat surprised with your letter of November 29, 1977, copy attached. It is true that the importer is responsible for the duties and taxes. However, it cannot be assumed in this case that the 1,100 cases of sparkling wine (see photo attached) arrived since inspector E. K. Rawls noted, as you will appreciate that there were "427 cases only in container 399368."

Inspector Rawls made the statement after he personally opened the sealed containers.

Therefore, we respectfully request again a refund in the amount of $7,074.36 for the 673 cartons missing. We are sure there is some misunderstanding here since the fisc is only interested in collecting its share of the duties.

We shall add again, as Customs has been advised, that the carrier has been unwilling to cooperate.

Very truly yours,

The question thus presented to the court is whether the letter constitutes a protest and whether it was timely filed.

Jurisdiction of this court is set forth in 28 U.S.C. 1582(a) which provides so far as is pertinent herein that this court "shall have exclusive jurisdiction of civil action instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied, in whole or in part, by the appropriate Customs officer. * * *"

Section 514(a)(3) provides that decisions of the appropriate Customs officer including the legality of all orders and finding with respect to "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury" are final and conclusive unless a protest is filed or a civil action is instituted pursuant to 28 U.S.C. 2632 within 180 days, 28 U.S.C. 2631, of the denial of a protest. Section 514(2), Tariff Act of 1930, requires the filing of a protest within 90 days from the date of liquidation.

The entry was liquidated on November 11, 1977, and the letter of counsel for plaintiff is dated January 20, 1978.

The court is aware of the fact that the letter of counsel for plaintiff was addressed to a senior import specialist rather than the district director. However, the court notes the reply was from the district director in which the facts of the importation and the claim were acknowledged.

It has long been a cardinal rule in construing a protest that it need not be made with technical precision as long as the importer indicates distinctly and definitely the source of the complaint and his intention to make it the basis of his claim against the government. *Greeley's Administrator* v. *Burgess (Converse* v. *Burgess)*, 59 U.S. 413.

In *Arthur* v. *Morgan*, 112 U.S. 495, the Supreme Court made the following observation:

> * * * A protest which indicates to an intelligent man the ground of the importer's objection to the duty levied upon the articles should not be discarded because of the brevity with which the objection is stated. [*Schell's Executors* v. *Fauché*, 138 U.S. 562.]

In addition to the foregoing, in instances such as in the case at bar, where the claim is obvious, a failure to state specific provisions of law is not fatal to the sufficiency of a protest. *How-Tex Peanut Company, Inc.* v. *United States*, 54 Cust. Ct. 316, Abs. 69066 (1965). In the case of *United States* v. *Eaton Mfg. Co.*, 60 CCPA 23 (1972), the court stated: "The denial of jurisdiction for insufficiency of protest is a severe action which should be taken sparingly." The construction above is indicative of the fact that the protest is sufficient notice to the district director of the intended claim.

It is also apparent that the claim for refund of duty and internal revenue tax is within the jurisdiction of the Secretary of Treasury.

The question as to whether the letter was timely received, since the office of the district director is unable to locate the original letter and cannot by records attest to the date of receipt is next considered. The letter dated January 20, 1978, was answered on October 30, 1978, and was accordingly received. The office of counsel for plaintiff is in Coral Gables, Fla., and the district director is in Miami, Fla., a distance of under 10 miles, according to the Rand McNally map contained in the "Standard Highway Guide." With all due respect to the efficiency of the Postal Service, occasions do arise when properly addressed mail is delayed or diverted from its appointed course. However, there is a strong presumption that letters entrusted to the mails reach their destination in the ordinary course of time. *Dunlop* v. *United States*, 165 U.S. 486. Even considering the delays in the mails, it can be presumed that delivery was accomplished within 19 days or prior to February 8, 1978, which is 90 days from the date of liquidation.

A further examination of the papers also indicates that a summons instituting the action in this court was timely filed.

The court having jurisdiction in this matter therefore denies defendant's motion to dismiss for lack of jurisdiction. This action should be noticed for trial for determination on the merits.